No. 2881.—MURDOCK & WILLIAMS *v.* CITIZENS' BANK OF LOUISIANA.

In a case of a confidential contract arising from irregular or special deposits with a bank, compensation does not take place, and the depositary is not authorized (under the pretense that a custom exists to that effect) to apply the funds on·deposit to the payment of the debts of the depositor. 2 An. 25; 11 An. 73; 10 R. 200.

In this case, the evidence shows that a special deposit was made in coin; that the bank soon after suspended specie payment; that a promise was made by the bank and inserted in writing in the bank-book of the depositor, that so soon as the bank resumed specie payment, it would return the same in coin. The parties had subsequent transactions, predicated on Confederate notes as bankable funds.

The bank now seeks to avoid the payment of the deposit in coin, on the grounds that the depositor had, since the deposit, become indebted to it, which, by a custom among bankers, it had extinguished by crediting the amount on the indebtedness of the depositor; that it was authorized and protected in making this credit by a military order of the General of·the army of the United States in command at the time.

Held—That if such a custom existed, the bank could not avail itself of it in this case, because the law did not authorize it unless under a special mandate from the depositor; that the bank could not claim protection under the military order, because the money was not taken from the vaults of the bank and appropriated to the payment of the debts of the depositor under such order.

APPEAL from the Sixth District Court, parish of Orleans. *Cooley*, J. *D. C. Labatt*, for plaintiffs and appellees. *Armand Pitot*, for defendant and appellant.

HOWELL, J. The plaintiffs have sued the defendant for the sum of $2300, payable in coin, as the balance due them on deposit on the sixteenth September, 1861, when the bank suspended specie payment, and which sum, they allege, the defendant stipulated to keep as a special deposit, not to be drawn out until the end of the war. The defendant pleads the general issue, admits that plaintiffs had an account with it, which was closed on the tenth February, 1863, by the bank's taking in part payment of plaintiffs' indebtedness to it the

sum of $2006 94, the balance then on deposit, and leaving the plaintiffs. debtors to the bank in the sum of $2093 06, with eight per cent. interest from August 9, 1862, which it claims in reconvention, on the following grounds, to wit: That it is the holder of a note for $3100,. made by Hughes, Hyllested & Co., indorsed by plaintiffs, duly protested on ninth August, 1862, and notice given to the indorsers; and a note of J. D. Richardson for $1000, indorsed by plaintiffs, protested on twenty-third June, 1862, and notice given to the indorsers; that the balance of $2006 94 to the credit of plaintiffs was applied on said tenth February, 1863, by the bank as follows: To the extinguishment of the Richardson note, $1000, and part payment of the Hughes, Hyllested & Co. note, the sum of $1006 94, leaving a balance due on said last note of $2093 06, for which judgment is prayed, and it files a. copy of plaintiffs' bank account extending from September 4, 1861, to February 10, 1863, showing the above figures.

The plaintiffs having alleged two distinct accounts, one prior and the other subsequent to the sixteenth September, 1861, and the loss of of their bank book, propounded interrogatories to the defendant to ascertain the exact amount due at said date; whether it has been drawn against and how; whether a new account was kept after Confederate. money became bankable funds, and what is the condition of their account with the bank. To these the president answered, that the balance to the credit of plaintiffs on sixteenth September, 1861, was $1084 83, and that plaintiffs continued to deposit and draw checks, as. shown by the copy of the account filed; that they had but one account, and the balance to their credit on tenth February, 1863, was disposed of, as set out in their reconventional demand.

The account filed shows but one continuous account, which was balanced on twenty-fifth September, fourth October and ninth December,. 1861, twelfth February and eighteenth March, 1862, and tenth February, 1863. The deposits and checks appear frequently and continuously from fourth September, 1861, to fourteenth April, 1862, and checks to. first May, following, and on the tenth February, 1863, the appropriation was made as described by defendant. As a witness on the stand, the president of the bank states that it is a custom and standing rule with the banks of this city, when a depositor has funds to his credit and neglects to pay a note discounted by him, to debit him with the amount of such note; that when General Banks, by order No. 202,. sequestered certain moneys, the names of plaintiffs were in the list furnished to the bank as being subject to the order, and the president of the bank obtained permission from the commanding general to deduct the balance in its favor from the notes as above described. To this evidence it appears plaintiffs' counsel objected, but as no bill of exceptions was taken, we can not notice the objections.

Murdock & Williams v. Citizens' Bank of Louisiana.

The following is admitted to be the *contract* in the lost bank book: "On the resumption of specie payment by this bank, your balance on the sixteenth September, 1861, or any portion thereof not drawn for, will be paid to you in coin. All deposits since that date are payable in treasury notes of the Confederacy, as proven in suit No. 20,124, Fourth District Court, Citizens' Bank *v.* Condran." The record of the suit of Citizens' Bank *v.* Murdock & Williams, in the district court, parish of Tensas, is in evidence. The suit was brought on the Hughes, Hyllested & Co. note, subject to the above mentioned credit, and the plea of prescription was interposed by the defendants therein, plaintiffs here, was sustained by the court and the judgment affirmed on appeal.

The clerk of the plaintiffs testifies that the balance due on sixteenth September, 1861, was $2100 or $2200; that two distinct accounts were then made, and that there was a special agreement with the bank that the said balance was to be kept as a special deposit until the end of the war; that it has not been drawn for; that no authority was given to the bank to make the appropriation, as was done, and that plaintiffs were not aware of it until he informed them after inquiring of the president if it was subject to the check of one of the plaintiffs. Murdock's deposition corroborates the foregoing in the main.

The first question is, has the coin balance to the credit of the plaintiffs, or any part of it, been drawn out by them? The president of the bank says it has been drawn against, as shown by the account filed. A reference to this account, in connection with the special agreement contained in the bank book of plaintiffs, does not sustain this position. It shows that, between the sixteenth September, 1861, the date of specie suspension, and the twenty-fifth of the same month, when the first balance was struck in said account, the plaintiffs had deposited more than they checked out; and at each subsequent date, when a balance was struck, the same fact appears. By the act of suspension of specie payments and the terms and intent of the "agreement" or "contract" in the bank book, the dealings, after the sixteenth September, were to be in Confederate treasury notes, and it was incumbent on the bank, under the above state of facts, to prove specifically that this particular coin balance was specially drawn for. It is not to be presumed that an ordinary check, after said date, was paid in coin, for the bank had suspended specie payments.

But the bank contends that the balance of $2006 94 to the credit of plaintiffs on tenth February, 1863, which excluded the coin balance, was appropriated in part payment of plaintiffs' indebtedness on the two notes above referred to, and to establish this the testimony of the president as to a custom is relied on. It is true the president does state that such a custom exists, but the facts of this case, as stated by

him, show that this bank did not follow such a custom, if it existed. The two notes fell due, respectively, on June 23 and August 9, 1862, and the deduction or appropriation was not made until tenth February, 1863, and then only by special permission from the commanding general, as stated. If it was a custom with this and other banks to debit a delinquent depositor with the amount of his unpaid note, when he had funds to his credit, it would seem reasonable and business-like for the bank, in this instance, to have followed this custom and made the appropriation or debit when the notes fell due, and there would have been no necessity to appeal to military authority for permission to do so, some six or eight months afterwards. This action of the bank shows that it did not act upon, or have much confidence in, such a custom as, it is now pretended, existed.

In the case of Morgan v. Lathrop, 12 An. 257, it was decided that it is settled law in this State that in the confidential contracts arising from irregular deposits of this nature, compensation does not take place, and the depositary is not authorized to apply the funds on deposit in his hands to the payment of the debts of the depositor, except there is a special mandate from him, the depositor, or a course of dealing which will justify such application of the funds. See 7 An. 35; 2 An. 25; 10 R. 200; 11 An. 73. No such special mandate or course of dealing is shown in this case to justify such application.

The bank can not claim protection by a military order, for the money was not taken under such order. Nor can it profit by the result of the suit in Tensas parish, for this question was not raised there. The petition in said suit did not set out the manner in which the alleged credit on the note therein sued on was made, and, indeed, no mention was made of any credit, but the whole amount of the note was demanded, and the plea of prescription could not, under the circumstances, be an admission of the right to make the credit as claimed, if, indeed, it could under any circumstances. That plea is now become *res judicata* as to this note, and plaintiffs must recover the coin balance claimed by them. The judge *a quo*, however, erred in awarding more than this particular balance. The additional sum of $922 11, allowed by him, appears to us, from the evidence and especially the bank book, to be in Confederate treasury notes, for which no judgment can be given.

It is therefore ordered that the judgment appealed from be reversed, and it is now ordered that defendant's reconventional demand be dismissed; that plaintiffs recover of defendant the sum of $1084 83, with legal interest from fifteenth June, 1869, payable in coin, and all costs in the lower court; plaintiffs and appellees to pay costs of appeal.

Rehearing refused.