(80 South. 600)

No. 21668.

FELICIANA BANK & TRUST CO. v. CITY BANK & TRUST CO. OF MOBILE, ALA.

(Jan. 6, 1919.)

*(Syllabus by Editorial Staff.)*

1. BANKS AND BANKING ⊜⟾77(4)—IMPAIRMENT OF CAPITAL — DEPOSITS — BANKING LAW.

Where, to satisfy bank examiner, an ostensible loan was made to a bank and trust company in failing circumstances, the amount thereof being retained as a deposit by loaning bank under arrangement that loan might be charged to deposit at lender's option, the transaction did not accord with the Banking Law (Act No. 179 of 1902) as to the making good of impaired capital.

2. BANKS AND BANKING ⊜⟾77(6) — DEPOSIT IN ANOTHER BANK — APPLICATION TO INDEBTEDNESS.

Where a bank in failing circumstances, to quiet bank examiner, secured an ostensible loan, which was deposited to its credit in defendant bank, and executed a note therefor, the deposit would be regarded as what the president of defendant bank pretended it was; that is, "an absolute, unconditional, bona fide checking account."

3. BANKS AND BANKING ⊜⟾77(6)—INSOLVENCY—SET-OFF AGAINST CLAIMS.

Where failing bank obtained ostensible loan from defendant bank in form of a deposit ostensibly subject to check, but no part of deposit was used by borrower bank, it was too late, after examiner was notified to take charge of borrower bank on its failure, for defendant to charge the borrower's note for the loan to the deposit, in view of Civ. Code, art. 2215, forbidding compensation to prejudice of a third person.

4. BANKS AND BANKING ⊜⟾74 — IRREGULAR AND CONFIDENTIAL DEPOSIT.

Where bank in failing circumstances, to quiet bank examiner, obtained an ostensible loan from defendant bank in form of a deposit in defendant bank, such deposit was an irregular and confidential deposit, and the stipulation in the loan note that defendant bank might at its option charge the note to the deposit was, so far as attempting to authorize defendant, after failure of the borrower, to pay itself with the borrower's funds to the prejudice of all other creditors, contrary to public policy and void.

5. BANKS AND BANKING ⊜⟾77(4)—INSOLVENCY—COLLECTION OF CLAIM—SET-OFF.

Where bank in failing circumstances obtained from defendant bank a loan in the form of a deposit in defendant bank, executing its note therefor, and after insolvency defendant charged the note against the deposit and returned the canceled note, and the examiner, upon taking charge of borrower bank as liquidator, made prompt demand for payment of deposit but took no further action until suit was brought for the deposit, the canceled note then being for-

mally tendered as defendant's property, the liquidator's failure to offer promptly to return the canceled note was not ratification of its payment by application of the deposit.

Appeal from Twenty-Fourth Judicial District Court, Parish of West Feliciana; Charles L. Munson, Judge ad hoc.

Suit by the State Bank Examiner, as liquidator of the Feliciana Bank & Trust Company, against the City Bank & Trust Company of Mobile, Ala. Judgment for plaintiff, and defendant appeals. Affirmed.

S. McC. Lawrason, curator ad hoc, of St. Francisville, for appellant.

T. Jones Cross, of Baton Rouge, for appellee.

O'NIELL, J. This suit was brought to recover $25,000 deposited to the credit of the plaintiff in the defendant bank. The suit was filed by the state bank examiner, as liquidator; the plaintiff having failed after making the deposit.

The defendant, domiciled in Mobile, Ala., was brought into court by an attachment of its property in the parish of West Feliciana, and by service of citation upon a curator ad hoc.

The deposit sued for was the proceeds of a loan made by the defendant to the plaintiff bank, on a promissory note signed by the plaintiff, dated the 7th of April, 1913, payable to the defendant, on demand, and indorsed, individually, by the president and cashier of the plaintiff bank, and by three other individuals, who, we presume, were directors of the bank or otherwise interested in its welfare. The reciprocal debts of equal amount, one represented by the note payable on demand and the other represented by the deposit subject to check, were yet in existence when the Feliciana Bank failed. On the next day, the defendant, being informed of the bank's failure, applied the deposit to the payment of the note.

The district court was of the opinion that the defendant could not legally pay or extinguish the debt due to the bank in liquidation with a debt due by the insolvent institution. From the judgment in favor of the plaintiff, the defendant appeals.

The loan of $25,000 was made for the purpose of making good the impaired capital of the Feliciana bank. The bank was then, as the cashier testified, "in a desperate condition—had practically run out with all the banks it had borrowed from—and had exhausted its credit." The bank examiner was insisting that the bank should immediately rehabilitate its reserve. The president of the City Bank, with whom the cashier of the Feliciana Bank alone negotiated for the loan, was aware of the financial condition and difficulties of the Feliciana Bank when he consented to make the loan. He was much concerned, personally and for his bank, in averting a failure of the Feliciana Bank. He was one of its organizers, owned 50 shares of its stock when he made the loan, and his bank was then carrying a loan of $10,000 for the Feliciana Bank.

When the matter was referred by the cashier to the president (who was also the attorney) of the Feliciana Bank, he insisted that the deposit of the proceeds of the loan should be, according to the banking laws, subject to check and free from restraint of the City Bank. The president of the City Bank and the cashier of the Feliciana Bank then undertook to satisfy and quiet the bank examiner, without really putting up any money or subjecting any indorser to any risk or responsibility whatever, and without letting the president of the Feliciana Bank know the details of the transaction. They did not willingly admit all that in their testimony, but the proof is positive.

The president of the City Bank, when informed by the cashier of the Feliciana Bank of the advice given by the president and attorney (Judge Lawrason) of the Feliciana

Bank, wrote the cashier on the 5th of April, 1913, as follows, viz.:

"I received your letter and I understand, of course, what Judge Lawrason means about the reserve being under your control. We would credit the proceeds of this note to your account all right and it would be on the books subject to your check technically.

"I inclose herewith a note which I want you to use when you make this loan, however, and it will not conflict with the judge's ruling in regard to this matter and yet meet in every way with our agreement and ideas as to the way in which this would actually work out. If you have begun getting the signatures of the indorsers, begin over again, and you can get them up Monday and Tuesday and send it to me that night, which would comply in every way with the conditions demanded by the state bank examiner.

"You will notice that I have made the rate 6 per cent., but I am going to credit you with 3 per cent. on daily balances, which will make the rate you are paying only 3 per cent. This I think is as liberal as I can be. The note itself must show a 6 per cent. rate is the reason I am handling it in this way."

On cross-examination, the cashier of the Feliciana Bank said that he did not know what was meant by the statement in the letter that the deposit would be subject to check "technically." He said that the expression was a mystery to him; that his understanding was that the loan would be reduced every month as much as possible, without letting the bank's reserve get out of line; and that the deposit of $25,000, in the City Bank was to be kept as a reserve—"to be used for that purpose." Explaining why he had not checked against the deposit of $25,000 rather than let the bank fail ultimately, he said:

"We realized that, unless we could raise more money on our paper, it would be absolutely ridiculous for us to use up this money and then be exactly where we were when Mr. Young (the bank examiner) wrote us this letter. * * * If we had drawn on him (the president of the City Bank) for $25,000, he would have concluded that the bank was in trouble and wired us."

The form of note which the president of the City Bank furnished and insisted upon using, besides having printed in it all other stipulations, waivers, and renunciations that are usually found in notes furnished by banks, bore this typewritten stipulation, viz.:

"At the option of the payee this note can be charged to our account and any balance applied as a payment in whole or in part to this note."

The president of the City Bank testified:

"The proceeds of the $25,000 note were credited to the regular account of the Feliciana Bank & Trust Company. and was an absolute, unconditional, bona fide credit, subject only to the provisions on the face of the note."

Asked whether his bank would have honored the Feliciana Bank's check for $25,000 in due course and without question, he replied:

"Not without first communicating with the Feliciana Bank & Trust Company. Before paying such check we would have asked the Feliciana Bank & Trust Company for payment of their note, under the terms stated in the note, and, if not arranged for satisfactorily, would have refused payment on the check and charged the demand note to their account."

[1] That explains—if explanation be wanting—what the president of the City Bank meant by the mysterious statement that the deposit of $25,000 would be subject to the Feliciana Bank's check "technically;" the fund would be subject to check, but the check would not be honored. That is simple enough. But it is not in accord with the provisions of the banking law for making good an impaired capital. See Act No. 179 of 1902, p. 334; Interstate Trust & Banking Co. v. Irwin, 138 La. 325, 70 South. 313; Kennedy v. Young, State Bank Examiner, 136 La. 674, 67 South. 547, L. R. A. 1915D, 935.

[2] We assume that the bank examiner was not informed that the Feliciana Bank had a debit to offset the credit of $25,000 in the City Bank; because, when the cashier of the Feliciana Bank wrote him that the impaired capital of the bank was made good, the examiner congratulated the cashier.

For the purpose of this decision, the deposit must be regarded as having been what the president of the defendant bank pretended it was—"an absolute, unconditional, bona fide checking account." He could not contend, successfully or with good grace, that it was only a sham, arranged to defeat the banking law, deceive the bank examiner, and impose upon innocent patrons of the bank.

[3] The loan was made on the 7th of April, 1913, and no part of the money was ever drawn or used by the borrower. The insolvent bank was closed on the 26th of August, that year; the state bank examiner was then notified to take charge of and liquidate the bank's affairs; and the president of the City Bank was also notified of the failure. It was then too late for the debt due by the City Bank to be extinguished by compensation or set-off against the debt due by the insolvent institution; it was too late for the City Bank to pay or compensate itself by retaining an asset of the insolvent bank, without the consent of its other creditors.

Article 2215 of the Civil Code provides that compensation cannot take place to the prejudice of a third person; and, to illustrate, says that a debtor, who has been proceeded against by a third party by garnishment or attachment, cannot plead compensation if he afterwards becomes a creditor of the one to whom he was in debt.

Applying those provisions of the Civil Code, in People's Bank v. Mississippi & Lafourche Drainage District, 141 La. 1009, 76 South. 179, it was said:

"There is express law upon the subject of the extinguishment of debts by compensation, and hence no occasion or authority for resorting to equity; but, if it were otherwise, there is no principle of equity which entitles a person who is, at once, a depositor in, and a borrower from, a bank, to be made whole, in the event of its insolvency, by the plea of compensation, when the other depositors stand to lose the entire amounts deposited by them."

In the case cited, extinguishment of the two debts by compensation did not occur before the bank failed, because payment of the debt of the borrower and depositor was not then due. In the case before us, extinguishment of the reciprocal debts by compensation did not occur before the bank failed, because there was an agreement between the parties that the deposit should remain—and it is admitted that it did remain—as a reserve fund, subject to check. The principle upon which the decision in the People's Bank Case rested is therefore applicable to this case.

In Murdock & Williams v. Citizens' Bank, 23 La. Ann. 113, citing several decisions, it was said that, in a confidential contract arising from an irregular deposit, compensation could not take place, and the depository could not apply the fund on deposit to the payment of a debt due by the depositor, without a special mandate from him or a course of dealing that would justify such application of the fund.

[4] The deposit in the case before us was an irregular and confidential deposit, for a particular purpose. That seems to be conceded, because the plea of compensation is urged only in the alternative—in the event that we should hold that the defendant had no right to charge off the note after the Feliciana Bank had failed. Appellant relies primarily upon the special mandate or agreement embodied in the note, authorizing the holder to charge it off at any time against the reserve fund. The question to be decided is, not whether the defendant might have exercised that right legally while the Feliciana Bank was a going concern, but whether the officers of the Feliciana Bank could legally give authority to one of the bank's creditors to pay himself with the bank's reserve fund, to the prejudice of all other creditors, in the event of a failure of the bank. Our answer is that, to that ex-

tent, the mandate or agreement was contrary to public policy and was void.

[5] The defendant, in answer to this suit, pleaded that the bank examiner was estopped by his having retained the canceled note which the defendant had returned to the Feliciana Bank a few days after its failure. When the examiner took charge as liquidator, he made prompt demand on the City Bank for payment of the deposit. The bank replied that the fund had been applied to the payment of the note and that the canceled note had been returned. The liquidator took no further action in the matter until his attorney advised that suit should be brought to recover the deposit. The canceled note was then annexed to the petition, filed in June, 1914, and was formally tendered as the property of the defendant. The tender, of course, was declined in the defendant's answer. The note was attached in this suit, as property of the defendant, together with property admitted to belong to defendant.

The liquidator's failure to offer promptly to return the canceled note cannot be considered a ratification of its payment with the bank's reserve fund. He was acting cautiously and on advice of counsel. He had no authority to ratify—and did not pretend to ratify—an illegal extinguishment of a debt due to the insolvent bank. His silence in the matter did not prejudice the defendant in any way. There is therefore no merit in the plea of estoppel.

The judgment appealed from is affirmed.

DAWKINS, J., takes no part.