(101 South. 315)

No. 25938.

THOMAS, State Bank Examiner, etc., v. MARINE BANK & TRUST CO.

(Jan. 28, 1924. On Rehearing, July 8, 1924.)

*(Syllabus by Editorial Staff.)*

1. Banks and banking ⬤⟿134(1)—Bank may not apply funds on deposit to payment of debts of depositor, especially where depositor is insolvent bank.

Bank cannot apply funds on deposit to payment of debts of depositor without agreement to that effect, nor can they be set off against depositor, especially where depositor is another bank which has become insolvent, requiring collection in due course of liquidation by bank examiner, and then only to extent of distributive share of assets.

2. Banks and banking ⬤⟿73—Property of debtor common pledge of all creditors.

Property of debtor bank is common pledge of all creditors, unless there exists between creditors some lawful cause or legal right of preference.

3. Banks and banking ⬤⟿73—Insolvency of bank fixed right of creditors as of time bank was taken over for liquidation.

Insolvency of a bank fixed rights of all its creditors as they existed at time affairs were taken over for liquidation by state banking department.

4. Banks and banking ⬤⟿105(½)—Pledge of assets and securities held not supported by resolution; "borrow."

Resolution of directors of bank, authorizing officers to "borrow" money and pledge assets as security, did not authorize a pledge of assets and securities to cover amount collected by borrowing bank on Liberty bonds forwarded by lending bank for delivery to purchasers (citing Words and Phrases, First Series. Borrow).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Borrow.]

5. Banks and banking ⬤⟿109(3)—Officer of bank cannot pledge assets without specific authority from directors.

In view of section 4 of Act No. 193 of 1910, amended by Act No. 251 of 1916, cashier of a bank was not authorized to sign note permitting lending bank to pay, out of any money belonging to borrowing bank, any future debt which might become due and owing, other than borrowed money, without specific authority from directors.

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by L. E. Thomas, State Bank Examiner, liquidator of the People's Bank of Plaquemines against the Marine Bank & Trust Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Terriberry, Rice & Young, of New Orleans, for appellant.

P. G. Borron, of Baton Rouge, and John R. Perez, of New Orleans, for appellee.

Amici curiæ on Application for Rehearing:

Monroe & Lemann, of New Orleans, for Whitney-Central Nat. Bank.

Dufour, Goldberg & Kammer, of New Orleans, for Hibernia Bank & Trust Co.

Walter L. Gleason, of New Orleans, for American Bank & Trust Co.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, for Interstate Trust & Banking Co.

Merrick & Schwarz, of New Orleans, for New Orleans Clearing House, and Canal-Commercial Trust & Savings Bank.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

THOMPSON, J. The question presented in this case is the legal right of the Marine Bank & Trust Company, after the People's Bank had become insolvent and had been taken over for purposes of liquidation by the state bank examiner, to apply a sum on deposit to the credit of the People's Bank and a surplus collected on bills receivable of the People's Bank which had been pledged to

the defendant bank for a particular debt, to the payment of a debt due the defendant bank for Liberty bonds which had been placed with the People's Bank and disposed of for account of the Marine Bank.

The pertinent and material facts are admitted. In the months of December, 1920, and January and the first half of February, 1921, the People's Bank, through its cashier, acting under a resolution of the board of directors, borrowed from the Marine Bank the sum of $74,500, which loan was evidenced by several promissory notes executed on behalf of the People's Bank. To secure the amount borrowed bills receivable of the People's Bank to the amount of $106,318.36 were pledged to the creditor bank. The notes contained the following stipulations:

"At the maturity of this note, or when otherwise due, as above provided, any money, stocks. bonds or other property of any kind whatsoever, on deposit or otherwise, to the credit of the maker. on the books of said Marine Bank & Trust Company or in its possession. shall at once stand applied to the payment of this note, or any other indebtedness. up to the limit above stated. unless it be otherwise paid.

"In the event of the undersigned failing or being unable to meet any of his obligations or in case of the insolvency or bankruptcy of the undersigned, this note and all the said liabilities shall become and be immediately due and payable without demand or notice, notwithstanding any credit or time allowed the undersigned by any instrument evidencing any of said liabilities."

The People's Bank was closed on account of insolvency, and was taken over by the state bank examiner on February 21, 1921. A few days prior thereto the Marine Bank had sent to the People's Bank Liberty bonds amounting to $5,000 to be delivered to certain purchasers. The People's Bank collected on these bonds, and placed to the credit of the Marine Bank $4,750.98.

On October 28, 1921, the amount due the Marine Bank by the People's Bank, including principal and interest for money borrowed, was $75,996.24, and for Liberty bonds sold $4,750.98, making a total of $80,747.22.

The Marine Bank had on deposit to the credit of the People's Bank $3,418.21, and had collected on the pledged collaterals $77,149.-95, making the aggregate amount due the People's Bank (with $187.63 interest on deposits) on October 28, 1921, $80,755.79.

So that, if the Marine Bank had the right to apply the deposit of $3,418.21, with interest and the amount of the collections on the pledged collaterals, after satisfying the debt due for borrowed money, to the discharge of the amount which the People's Bank owed on the Liberty bonds, there would be due by the Marine Bank only $8.57. But, if the application or imputation could not be thus made, then the Marine Bank admittedly owes the People's Bank $4,759.55, the amount herein sued for, and for which judgment was rendered in plaintiff's favor by the lower court.

[1] It is conceded by counsel for the defendant that the relation of creditor and debtor does not exist as between a bank and its depositor, in the sense that the bank could apply the funds on deposit to the payment of the debts of the depositor without agreement to that effect or that legal compensation or set-off could be asserted by the bank as against a depositor.

In the case of Morgan v. Lathrop, 12 La. Ann. 257, it was said that it is settled law in this state that in the confidential contracts arising from irregular deposits of this nature compensation does not take place, and the depositary is not authorized to apply the funds on deposit in his hands to the payment of the debts of the depositor. Murdock v. Citizens' Bank, 23 La. Ann. 116; Breed v. Purvis, 7 La. Ann. 53; Bogert v. Egerton, 11 La. Ann. 75.

In Beatty, Syndic, v. Scudday, 10 La. Ann. 404, Mr. Justice Spofford, concurring in the judgment, said:

"I think it manifest that compensation never took place by * * * operation of law, which

is the only species of compensation treated of in the Civil Code. It seems to be conceded by the parties that both debts are liquidated. But the fact that one of them was an irregular deposit, whilst the other was an ordinary ·debt, was an obstacle to their mutual extinguishment."

It is to be observed that the Marine Bank ·sought to apply the funds on deposit to the credit of the People's Bank to the payment ·of the debt due for money collected by the People's Bank on the Liberty bonds long after the latter bank had become insolvent and while it was in course of liquidation· by the examiner of state banks. In People's Bank v. Mississippi & Lafourche Drainage Dist., 141 La. 1009, 76 South. 179, it was said:

"There is express law upon the subject of the extinguishment of debts by compensation, and hence no occasion or authority for resorting to equity; but, if it were otherwise, there is no principle of equity which entitles a person who is, at once, a depositor in, and a borrower from, a bank, to be made whole, in the event of its insolvency, by the plea of compensation, when the other depositors stand to lose the entire amounts deposited by them."

The Marine Bank could not have enforced the collection of the proceeds of the Liberty bonds from the People's Bank except in due course of its liquidation by the bank examiner, and then only to the extent of its distributive share of the assets or dividends.

To permit the defendant bank to apply the funds coming into its hands from collections on the bills receivable in excess of the debt due for borrowed money to the claim for the amount of the Liberty bonds, long after said People's Bank had become insolvent and was in course of liquidation, would be unjust and inequitable to other depositors and creditors of said insolvent bank.

[2] It is a rule of law that the property of a debtor is the common pledge of all his creditors, unless there exists between the creditors some lawful cause or legal right of preference.

[3] And as the death of a debtor fixes the rights of the creditors as they exist at that moment, so the civil death or the insolvency of the People's Bank fixed the rights of all its creditors as they existed at the time the affairs of said bank were taken over for liquidation by the state banking department, and no subsequent act of the defendant bank has changed or could change the legal situa-, tion from what it then was.

[4] But it is urged by the defendant bank that by special agreement and mandate contained in the notes, which we have copied in the first part of this opinion, the creditor bank was authorized to apply to the payment of any debt which might be due or owing to it by the People's Bank any money, bonds, stocks, or other property of any kind whatsoever, and that under this stipulation the defendant bank was justified in applying the funds coming into its possession after the declared insolvency of the People's Bank to the payment of the Liberty bond debt.

The answer to that contention is: (1) That the cashier of the People's Bank was not authorized to make any such agreement, nor to grant any such mandate; and (2) even if such authority was conferred on the cashier by the resolutions of the board of directors, such authority was revoked by the insolvency of the bank long prior to the attempted execution of the mandate; and (3) the execution of such an agreement or mandate at the time and in the manner attempted was contrary to public policy, and was null and void.

The resolutions under which the cashier was authorized to borrow money from the Marine Bank and to execute notes therefor were passed by the board of directors of the People's Bank on March 6, 1918, and are as follows:

"Whereas, it is highly desirable that the officers of this bank should from time to time be able to borrow sums of money on its behalf, resolved, (1) that the president, vice presi-

dent, and cashier of this bank are and each of them is hereby authorized to borrow from time to time, on behalf of this bank, from the Marine Bank & Trust Company of New Orleans, La., such sums of money, for such times and upon such terms as may to them or any of them seem advisable, and to execute notes, certificates of deposits, or agreements accordingly in the name of the bank for the payment of any sums so borrowed; (2) that each of the said officers is hereby authorized to pledge any of the bonds, stocks, bills receivable or other securities or property of the bank for the purpose of securing any moneys so borrowed upon such terms as may to the officer placing the same seem advisable."

It is to be observed that the authority given to the officers of the bank was limited entirely to borrowing money and to the making of such contracts as might be deemed advisable or desirable to secure the repayment of such borrowed money.

There is not a word in said resolutions that would, expressly or by any reasonable implication, authorize any officer of the bank to grant any mandate, or to make any agreement, conferring on the Marine Bank the authority to pay any debt, present or future, which may be due or become due to the said bank by the People's Bank, out of funds or moneys of the People's Bank coming into the possession of the Marine Bank, other than the debt authorized to be contracted—the money borrowed.

[5] It scarcely needs citation of authority to sustain the proposition that an officer of a bank cannot make a contract, such as here contended for, that would be binding on the bank in the absence of clear and specific authority from the bank to do so.

"That no officer of any State Banking Association, Savings Bank or Trust Company shall have the right to borrow money and pledge or hypothecate any of its assets except in pursuance of a resolution of the board of directors duly entered upon its minute books." Act 193 of 1910, Amended by Act 251 of 1916.

When the cashier of the People's Bank signed the note authorizing the Marine Bank to pay itself out of any moneys belonging to the People's Bank, any future debt which might become due and owing by the People's Bank other than borrowed money, he exceeded his authority, and his act is not binding on the People's Bank nor on the bank's legal representative—the liquidator. But, even if authority had been conferred on the cashier to grant the mandate under consideration, that authority ceased the moment the bank became insolvent and its business taken over for liquidation by the bank examiner.

As we have already seen, at the time the Marine Bank attempted to execute the mandate the People's Bank had ceased to be a going concern. The cashier had become functus officio, and could no longer act for the bank; and what he could not himself do for the bank he clearly could not authorize any one else to do. The unexecuted mandate—if there was a mandate—lapsed with the passing out of office of the cashier.

But, more than this, the attempt to divert the funds of the bank in the manner claimed, after the insolvency of the bank had been declared to the knowledge of the Marine Bank, and after the state, through its proper department, had stepped in and assumed the liquidation of the affairs of the bank for the benefit of all depositors, creditors, and stockholders, was ultra vires and contrary to public policy. In Feliciana Bank & Trust Co. v. City Bank & Trust Co., 144 La. 396, 80 South. 602, this court said:

"Appellant relies primarily upon the special mandate or agreement embodied in the note, authorizing the holder to charge it off at any time against the reserve fund. The question to be decided is, not whether the defendant might have exercised that right legally while the Feliciana Bank was a going concern, but whether the officers of the Feliciana Bank could legally give authority to one of the bank's creditors to pay himself with the bank's reserve fund, to the prejudice of all other creditors, in the event of a failure of the bank. Our answer is that, to that extent, the mandate or agreement was contrary to public policy and was void."

The case from which the above quotation is taken cannot be distinguished in principle from the instant case. It is true the court in the cited case did say that the creditor of the insolvent bank could not pay himself with the bank's reserve fund to the prejudice of all other creditors, and to that extent the mandate was contrary to public policy. There can be no real difference so far as the creditors and depositors are concerned between the ordinary funds and assets of a bank and the fixed legal reserve of the bank. All funds of the bank constitute a reserve fund for the benefit, first, of the depositors and creditors, and, second, of the stockholders. The court in the cited case did find and so stated that the fund sought to be applied by the creditor was an absolute, unconditional, bona fide checking account. The fund was therefore an asset of the bank, the same as the fund here sought to be applied by the Marine Bank on its debt is an asset of the defunct People's Bank; and it does not alter the situation to say in the one case that the fund was a part of the bank's reserve fund.

It is argued that the plaintiff should not be permitted to urge the want of authority in the cashier to give the mandate to the Marine Bank because there is no allegation to that effect in the petition. But the defendant admits the debt sued for, and specially pleads discharge and satisfaction under authority of the agent of the People's Bank. The special plea was open to every defense, including the want of authority of the agent, without replication or pleading on the part of the plaintiff.

For the reasons assigned, the judgment appealed from is affirmed, at appellant's cost.

### On Rehearing.
By the WHOLE COURT.

O'NIELL, C. J., We have concluded that, inasmuch as the judgment that was rendered in this case is well founded upon the fact that the resolution on which the officers of the People's Bank acted in pledging the bank's credits to the Marine Bank was confined to the securing of loans made in virtue of the resolution, the pronouncement made in the opinion handed down by a section of the court that the transaction would have been contrary to public policy if it had been authorized by the resolution of the board of directors was not necessary for a decision of the case, and should not stand as authority.

We have also concluded that the decision rendered in the case of the Feliciana Bank & Trust Co. v. City Bank & Trust Co., 144 La. 389, 80 South. 600, is not authority for the judgment rendered in this case.

The important distinction between the Feliciana Bank Case and this case is that the Feliciana Bank was already insolvent when the officers of the bank undertook to pledge its reserve fund to a creditor having knowledge of the insolvency of the Feliciana Bank. In the case before us the People's Bank was not insolvent when its officers pledged to the Marine Bank the money, stocks, bonds, or other property, on deposit or otherwise, to the credit of the People's Bank, on the books of the Marine Bank, or in its possession, etc.

But that is not the only distinction between the Feliciana Bank Case and this case. In the Feliciana Bank Case, the City Bank & Trust Company, of Mobile, a creditor of the insolvent Feliciana Bank, undertook to deceive the bank examiner by pretending to put up a sum necessary to make good an impairment of the capital or surplus of the Feliciana Bank, at the same time retaining the sum on deposit, ostensibly but not really subject to check, but subject to being charged off as a loan to the Feliciana Bank at any time that the bank might fail. Our ruling was that the City Bank & Trust Company had to make good its pretense of having placed the money on deposit to the credit of the Feliciana Bank & Trust Company.

In the case before us we have concluded to rest our decree affirming the judgment appealed from upon the first or primary plea that was urged in defense of this suit; that is, that the resolution of the board of directors of the People's Bank & Trust Company, authorizing the officers of the bank to borrow money from the Marine Bank & Trust Company and to secure the loans by pledging the assets or credits of the People's Bank, did not authorize a transaction by which the Marine Bank & Trust Company might apply money on deposit to the credit of the People's Bank, or the proceeds of bills receivable collected or sold for account of the People's Bank, to the payment of the debt due by the People's Bank for the Liberty bonds sold for account of the Marine Bank.

By section 4 of Act 193 of 1910, as amended by Act 251 of 1916 (page 524), bank officials are forbidden to pledge or hypothecate any of the assets of the bank except in pursuance of a resolution of the board of directors duly entered upon the board's minute book.

The authority granted by the resolution of the board of directors in this case to pledge or hypothecate the assets or credits of the People's Bank was plainly limited to the securing of the loans which the resolution authorized the bank's officials to negotiate with the Marine Bank. In the first paragraph of the resolution (quoted in the original opinion rendered in this case), the officers of the People's Bank were authorized to borrow money, from time to time, from the Marine Bank, and to execute notes, certificates of deposit, or agreements, "for the payment of any sums so borrowed." And in the second paragraph of the resolution the officers of the People's Bank were authorized to pledge any of the bonds, stocks, bills receivable, or other securities or property of the bank, "for the purpose of securing any moneys so borrowed." There was no authority given to pledge any of the assets or credits of the bank, or to make any "agreement," except to secure the payment of money borrowed under authority of the resolution.

It is true the word "borrow" has been given the meaning, in some cases, of a transaction similar to that by which the People's Bank owed the Marine Bank the proceeds of the sales of the Liberty bonds. See 1 Words and Phrases, First Series, p. 844. But the authority to pledge or hypothecate the bank's assets or credits in this case is restricted, not merely to the securing of money borrowed, but to the securing of money borrowed in virtue of the authority conferred by the resolution; and, surely, the transaction regarding the Liberty bonds had nothing to do with the authority conferred by the resolution of the board of directors of the People's Bank.

For the reasons stated in this opinion, the decree heretofore rendered in this case is reinstated and made final.

ST. PAUL, J., concurs in the decree.