## In re TANGIPAHOA BANK & TRUST CO.

### Intervention of FARRIS.

### No. 1507.

Court of Appeal of Louisiana. First Circuit.

June 14, 1935.

Ponder & Ponder, of Amite, and Robt. M. McGehee, and Jos. M. Blache, Jr., both of Hammond, for appellant.

Mat J. Allen, of Amite, for appellee.

DORE, Judge.

Joe Farris intervened in the liquidation of the Tangipahoa Bank & Trust Company seeking compensation or offset in the payment of two notes amounting to the sum of $625, and the cancellation and the return of the notes, by virtue of his deposits in the Hammond State Bank and the Tangipahoa Bank & Trust Company. There was judgment for Joe Farris as prayed; the liquidator has appealed.

On December 28, 1931, Joe Farris acquired property, and, in satisfaction of all or part of the purchase price, he executed two certain promissory notes, bearing on such property he may have purchased. (We regret that the record fails to include a certified copy of the act of sale in order that we could fully state the facts and description of the property purchased, and must make our statement from the notes in evidence.) Each note becomes due on June 1, 1932, one for the sum of $300 and the other for $325, and each of the said notes bears interest at the rate of 8 per cent. per annum from date until paid in full, payable at Hammond State Bank & Trust Company, at Hammond, La., and being paraphed "Ne Varietur," secured by an act of sale and mortgage executed before A. W. Spiller, notary public, of date of December 28, 1931.

When these two notes became due on June 1, 1932, the notes were held by the Hammond State Bank & Trust Company. Joe Farris, the intervener herein, paid the accrued interest thereon and extended the payment therefor until June 1, 1933, and which extension of the payment of the said notes was duly indorsed on these said notes. At that time intervener had on deposit sum or sums of money, the exact amount is not clearly shown; however, according to his testimony, he consented to pay the interest and not use the money then on deposit in liquidation of the notes. On December 19, 1932, the Hammond Bank & Trust Company went into liquidation, and at which time the intervener, Joe Farris, had then on deposit approximately $461.84. On December 22, 1932, the Tangipahoa Bank & Trust Company acquired all of the assets of the Hammond State Bank & Trust Company, and proposed to the depositors of the said bank 20 per cent. of their deposits in cash, and the remainder thereof to be evidenced by four certificates of deposits due 17, 29, 41, and 53 months from date of December 19, 1932, without interest and not subject to check. Pursuant to this sale, Joe Farris, intervener, received and

accepted the 20 per cent. of his deposit in cash, and received and accepted the four certificates, due as above, the first three for the sum of $92.37, and the last for the sum of $92.36, thereby consenting to the method of reorganization. He continued doing business with the Tangipahoa Bank & Trust Company. On June 1, 1933, when the said notes became due and payable, the intervener, Joe Farris, again paid the interest on the said notes 'and consented that the maturity thereof be extended until June 1, 1934.

On August 23, 1933, the state bank commissioner, acting under the laws of this state, restricted the said bank to withdrawals by the depositors to 5 per cent. of their deposits, and "froze" the remainder thereof, that is, the 95 per cent. of the original; the bank remained opened under such restrictions until January 19, 1934, at which time the bank was ordered to be under liquidation by the banking department, and an order was accordingly signed by the judges of the district court, naming the state bank commissioner as liquidator of the defunct bank. On August 23, 1933, the intervener had on deposit the sum of $308.91 to his credit, and which amount was due him at the time the Tangipahoa Bank & Trust Company was put into liquidation. On June 8, 1934, seven days after due date of the notes, the intervener, Joe Farris, tendered to the special agent of the liquidator a check drawn on the said bank in liquidation to the amount of $256.89 and also the certificates of the said bank, heretofore referred to, to the amount of $369.47, making a total sum of $626.36, in full settlement of the notes, and demanded the return of the said notes, and which was refused by the special agent of the liquidator.

The question presented to us is whether or not compensation or offset takes place under these facts.

This question then is to be answered by the Civil Code, arts. 2207–2209, and for the basis of this decision are verbally reproduced:

"2207 (2203) When two persons are indebted to each other, there takes place between them a compensation that extinguishes both the debts, in the manner and cases hereafter expressed.

"2208 (2204) Compensation takes place of course by the mere operation of law, even unknown to the debtors; the two debts are reciprocally extinguished, as soon as they exist simultaneously, to the amount of their respective sums.

"2209 (2205) Compensation takes place only between two debts, having equally for their object a sum of money, or a certain quantity of consumable things of one and the same kind, and which are equally liquidated and demandable."

Applying these articles of our Civil Code to the case at bar, we find, as heretofore stated, that the two notes in question were due on June 1, 1932. Had intervener desired then to plead compensation or setoff as against his deposit with the Hammond State Bank & Trust Company, the only requisite on his part would have been to so inform the said bank and to give a check against his account; but he did not do so; he merely paid the interest and consented to an extension of time to pay the said notes. He now complains that he was not willing, yet he does not charge nor prove that there was error, fraud, or ill practices on behalf of the officials of the Hammond Bank. C. C. art. 11, provides: "But in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good."

Civil Code, art. 7, states: "After the promulgation, no one can allege ignorance of the law." Thus it must be deduced that compensation cannot be allowed as of the time his notes became due on June 1, 1932.

Let it again be restated that the Hammond State Bank & Trust Company was put into liquidation on December 19, 1932, and that the present bank in liquidation acquired the notes and also the deposit of intervener. Intervener accepted his 20 per cent. in cash, and the remainder thereof in deferred certificates, in full settlement of his deposit, and he continued doing business with the said bank. That, upon the maturity of the notes on June 1, 1933, he again paid the interest and consented to the extension of the due date to June 1, 1934. The same logic and reasoning as heretofore stated apply to this phase of the question.

It can be readily stated that a person may renounce that right which the law grants him, that ignorance of the law does not excuse him, and, by agreeing to the extensions, he has renounced his rights at that particular time.

We now pass to the situation as existed on June 8, 1934, at which time the intervener made his tender and sought the compensation or offset which he now seeks to provoke.

This principle of law has been clearly and concisely adjudged in the case of People's

Bank in Liquidation v. Mississippi & Lafourche Drainage District, reported in 141 La. at page 1009, 76 So. 179, to the effect that compensation in such cases is not allowable. Quoting the syllabus by the court, and the body of the opinion justifies the same, the Supreme Court clearly stated:

"Compensation takes place, between two debts, by mere operation of law, as soon as they exist simultaneously to the amount of their respective sums, but only when the debts are equally liquidated and demandable, and it cannot take place to the prejudice of the rights of a third person; hence, after the declared insolvency of a bank, compensation cannot take place between a debt due by the bank to a depositor and an unmatured debt due by the depositor to the bank, or, between such debts when the latter matures during the liquidation of bank; for, at the moment of the declared insolvency, the unmatured debt of the depositor to the bank is not demandable; and from that moment until the liquidation is completed, the debts due the depositors by the bank become subject to a new liquidation, the rights of all the creditors being fixed by the insolvency and the distributive shares which may be, or may become, due them, respectively becoming dependent upon the total amount realized from the assets of the bank as compared with the total indebtedness and the expense of the liquidation."

And as stated in the case of Thomas v. Marine Bank & Trust Co., 156 La. 941, at page 946, 101 So. 315, 317: "And as the death of a debtor fixes the rights of the creditors as they exist at that moment, so the civil death or the insolvency of the People's Bank fixed the rights of all its creditors as they existed at the time the affairs of said bank were taken over for liquidation by the state banking department, and no subsequent act of the defendant bank has changed or could change the legal situation from what it then was."

It will therefore be observed that in the case at bar, as heretofore stated, the notes of the intervener had not yet matured at the time of the insolvency of the bank, and that therefore the same cannot be said to have been simultaneously due and payable, one of the essential elements of the plea of compensation or offset.

The intervener relies upon the case of In re Canal Bank & Trust Company, Intervention of Wainer, reported in 178 La. 961, 962, 152 So. 578, for recovery, and states in his brief that the case at bar is "on all fours" with that case. A careful reading of the case cited will convince that it has no application to the case at bar. In the Canal Bank Case just cited, Mr. Wainer made a demand for compensation prior to the bank's insolvency, and while the bank was operating and solvent; further, Mr. Wainer's note had a special mandate to the bank to apply his deposits in liquidation of his notes, the notes being due and payable at the time of his request for compensation as heretofore stated. The Supreme Court of our state did not create any new jurisprudence, nor did it change the same.

To the same effect, we say that this case can be differentiated from that of In re Canal Bank & Trust Co., Intervention of Bank of Picayune, 179 La. 1018, 155 So. 760. In that case, like the Wainer Case, the demand and tender was made prior to insolvency.

Each case must stand upon its own merits and must be decided according to the law applicable thereto. The case at bar falls under the category of Civil Code, arts. 2207–2209, quoted supra.

We are therefore of the opinion that the judgment of the lower court granting compensation in this case is erroneous and should be reversed.

The liquidator had filed a plea in reconvention, and which plea was not passed upon by the lower court, and it must be taken as denied. The liquidator having appealed from the judgment, we find no evidence to justify us in rendering a judgment, in that the note of evidence and the record fail to contain the original notes together with a certified copy of the act of sale in which the notes were given and described.

It is, for these reasons, ordered that the judgment appealed from be avoided, annulled, and reversed, and that there be judgment dismissing the intervention of Joe Farris, at his costs in both courts, and that the plea of the liquidator of the said bank in reconvention be dismissed as of nonsuit.

Judgment annulled, reversed, and rendered.

LE BLANC, J., not participating.