**MULLINS v. DE SOTO SECURITIES CO.,
Inc., et al. (HARDEE et al.,
Interveners).**

**Civil Action No. 257.**

District Court, W. D. Louisiana,
Shreveport Division.

Aug. 11, 1944.

908

See also 3 F.R.D. 271.

Pyburn & Pyburn, of Shreveport, La., and Eugene A. Nabors, of New Orleans, La., for plaintiff and interveners.

Clyde R. Brown, of Monroe, La., and L. E. Colvin, of Mansfield, La., for defendants.

PORTERIE, District Judge.

Just where are we? The date of the original filing of this case in the state court (then removed to us) was January 31, 1940. As a matter of necessary expediency, we must substitute for a narrative now the narratives of previous opinions. The first opinion by this court, sustaining a motion to dismiss, has a full and elaborately-detailed narrative and is found at 45 F.Supp. 871. The denial of the petition of certain interveners is found at 2 F.R.D. 502. The affirmance in part and the reversal in part by the Circuit Court of our first opinion is at 136 F.2d 55; and for the subsequent granting of the petition of interveners, see 3 F.R.D. 432.

We have reached the status where answers have been filed by all the defendants.

There have been many conferences of the attorneys with the court, and as a result, the original petition of seventy-eight paragraphs has been much reduced, in that numerous admissions have been made, and many paragraphs have been stricken by written opinion. So, in the four years, we have moved quite appreciably toward the objective of decision, because many legal phases of the case have been thoroughly digested, and both sides have meliorated with time allegations which at first were too violently asserted.

All contending parties in this derivative action, the plaintiff as well as the defendants, are in liquidation. That the drastic assertions of injury made by the plaintiff must be discounted philosophically is proved by the fact that even this complaining corporation has paid fifty per cent in dividends—not so bad; the attacked corporation, that is, the perpetrator of the injury, in its liquidation has paid now dividends aggregating seventy-five per cent. So, all in all, since this financial drama occurred during the decade covering our last depression, the clouds are not so black. We believe that the holders of the preferred stock who have instituted the derivative action under the name of the corporate plaintiff have been impressed by what we said in 45 F.Supp. 871, at page 887, supra:

"(b) because the co-owners of the preferred stock had rather make sure that they get their proportionate remittance from the cash assets of the Securities Company (an amount presumably around $50,000, as stated in argument) than to get

a court to order a master, authorized to surround himself with auditors, clerks, bookkeepers, stenographers, etc., not to mention lawyers, and who will spend a substantial portion of this $50,000 to establish a very doubtful claim whose only solvent source of collection would be the F.D.I.C."

The Circuit Court in its opinion in partial affirmance has absolved the Federal Deposit Insurance Corporation from liability.

So, if not legally, in the sense of good practice, we are led to understand why each side, now that the stage of issue drawn has been reached, should each rush simultaneously to the standard of a plea of summary judgment. It is to use every means of a decision on the merits without having to incur the costs which a full trial would entail.

This is merely an incidental thought. It is not to mean that the two motions for summary judgment, one from each side, are not sincerely made or are not properly legally premised.

■ Summary judgments are permitted under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. But their applicability is seldom, because of the strict requirements necessary.

"The summary judgment * * * may be availed of to bring an action to prompt conclusion when the pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Port of Palm Beach Dist. v. Goethals, 5 Cir., 104 F.2d 706; American Ins. Co. v. Gentile Bros. Co., 5 Cir., 109 F.2d 732, 735; Whitaker v. Coleman, 5 Cir., 115 F.2d 305." Acadian Production Corporation of Louisiana v. Land, 5 Cir., 136 F.2d 1, 2, 3.

Is either one of the motions for a summary judgment in the instant case good?

We shall consider first the one made by the plaintiff and interveners.

Paragraph (1) of this motion has no facts as yet in the record to prove it. It would take a trial with preponderant facts produced to substantiate it. The three affidavits, one by Mrs. Mabel C. Williams, the second by Mrs. Sarah Nabors Mullins, and the third by Thomas Hardee, Sr., offer nothing in proof of the allegations of paragraph (1).

Subparagraph (a) has general conclusions of the pleader, and contains not a single fact; so it must be omitted altogether as being proof of anything.

Subparagraph (b) falls under the same comment.

Paragraph (2) contains generalizations and a legal conclusion unsupported by any facts. It avails nothing to the plaintiff under a motion for a summary judgment.

In paragraph (3) it is asserted that one of the defendants in liquidation, the De Soto Bank and Trust Company, has paid its depositors an aggregate of seventy-five per cent in installments, "and will pay its depositors a substantial additional dividend," and further it is alleged that the De Soto Securities Company, the plaintiff in this derivative action, "will liquidate at a sum approximately equivalent to fifty per cent of the par value of its outstanding preferred stock and, therefore, if no relief is granted to its preferred stockholders they will receive a smaller payment in liquidation than the creditors and depositors of the De Soto Bank & Trust Company." These allegations are innocuous.

Paragraph (4) consists of the general conclusions of the pleader, and contains not a single fact; so it must be omitted altogether as being proof of anything.

Paragraph (5) falls in the same category as paragraph (4)—there being nothing but argumentative legal conclusions unsupported by a single fact in the whole record. It would take a trial on the merits, with a number of harmonious facts, to warrant the conclusion.

We should itemize more in detail the various controverted questions of fact which cause the motion for summary judgment by the plaintiff to fall.

It is stated in brief that the motion for summary judgment is grounded upon three general bases of fact:

(a) That prior to October, 1936, the Securities Company was dominated by the banks, and that a majority of the directors of the Securities Company were also directors of the banks.

(b) That the preferred stockholders of the Securities Company were deprived of an independent board of directors to properly discharge the fiduciary relationship.

(c) That plaintiff is entitled to judgment due to the policy of the self-dealing fiduciary in making repayment of debts and in transferring stock and other securities of doubtful value, and in operating the Securities Company with inadequate capital, and in pyramiding its assets and over-extending its credit.

The main objective of the motion is that judgment should be rendered for the plaintiff and interveners in the amount of $34,550, allegedly wrongfully repaid, partly to the De Soto Bank, and later partly to its receiver, out of the assets of the Securities Company. Alternatively, it is urged that the corporate fiction be ignored because the Securities Company was really an agency operated by the banks for their own benefit; that the preferred shares of the Securities Company are in truth a claim against the De Soto Bank and Trust Company in receivership. It is also argued in the brief, though not forming an integral part of the motion, that the preferred stock of the Securities Company now owned by the receiver should be subordinated to the other stock.

We find that many of the facts on which the motion is grounded are controverted and may not be resolved until after a trial on the merits:

(a) It is admitted that a majority of the directors of the Securities Company were from time to time also directors of the two banks, but there is no admission or proof that these directors violated any breach of trust. It is averred that the plaintiff and interveners were familiar with all previous facts when they acquired their stock and, directly or indirectly, familiar with the facts at all times thereafter. For chronology of events, see Mullins v. De Soto Securities, supra, particularly 45 F.Supp. at pages 876–878.

(b) There is no admission that the Securities Company was deprived of an independent board of directors; and the answer in respect to all intercorporate transactions is that these directors acted fairly and impartially.

(c) It is denied that there was a policy of self-dealing between the banks and the Securities Company. The answer admits a few instances of intercorporate transactions between the Bank of Commerce and the Securities Company prior to 1933, but the total amount involved was less than five per cent of the total assets held by the Securities Company and much less than the total investment by the Banks in common stock and preferred stock of the Securities Company. Repayment of the indebtedness can not be sustained as a wrong unless the charges of mismanagement are sustained. No such proof exists now. The questions as to whether or not the Securities Company was operated with inadequate capital, its assets pyramided, and its credit over-extended are, so far, matters of pure opinion.

Certainly the court can make no conclusion without testimony and a full understanding of the conditions under which the Securities Company was operated, of the type of business it conducted, and of the nature of its lending business.

In the brief it is stated that the motion for summary judgment by the plaintiff and interveners is based not upon specific items of damage resulting from the alleged condemned method of operation, but on the claim that an item of $34,550 was wrongfully appropriated, partly by the De Soto Bank, and the remainder by its receiver, to the Bank; and, consequently, that this indebtedness developed as a part of the scheme of transferring depreciated assets to the Securities Company and as a part of the plan of unreasonably pyramiding the assets of the Securities Company for the benefit of the bank.

The facts shown by the present record are that when the De Soto Bank purchased the assets of the Bank of Commerce in March, 1933, there was included a listed asset of $34,550 in notes owing by the Securities Company; that $18,325 of this amount was paid to the De Soto Bank prior to its being closed by the State Bank Commissioner in October, 1936; and that the balance of $16,225 was paid prior to May, 1939 (date of demand on behalf of plaintiff that the present action be instituted). It is not contended that the De Soto Bank, or the receiver, made any original loans to the Securities Company which later were wrongfully collected; but it is contended that the prior mismanagement and breach of fiduciary obligations by the Bank of Commerce converted the amount of this loan into a capital contribution and, therefore, that the collection was improper and constituted a breach of the fiduciary obligations of the De Soto Bank until it was closed and of the receiver of the De Soto Bank thereafter. But where are the facts to prove that the debts were not legitimate

and were not for legal and valid considerations?

We conclude that, even if this suit had been brought against either the Bank of Commerce or the De Soto Bank before they were closed by the State Bank Commissioner, there would remain many facts to be determined before the court could find that the repayment of the item of $34,550 would be improper. The generalizations charging over-extension of credit, pyramiding of assets, transfers of securities of doubtful value, can not by the preponderance of evidence be culled from facts in the present record and would have to be developed at a full and regular trial.

A question of law remains as to whether or not the De Soto Bank may be held liable for the acts of mismanagement by the Bank of Commerce. Opportunity for the presentation of facts relevant to this question of law must be allowed. There is no claim that the De Soto Bank transferred to the Securities Company any assets of a doubtful nature; and the brief admits that the Securities Company did not engage in business as a lending institution after the De Soto Bank acquired the assets of the Bank of Commerce in March, 1933.

It is advanced in brief as a principle of law by the proponents of this motion for a summary judgment that transfers made by the banks to the Securities Company were presumptively fraudulent because of the interlocking character of the directorates. It is conceded that, if the original banks were defendants in this action, it would be necessary that they sustain the burden of establishing the fairness to the Securities Company of every transaction by which the bank itself was benefited.

■ However, there is no complete prohibition against transactions by corporations having boards whose members are common:

"The relation of directors to corporations is of such a fiduciary nature that transactions between boards having common members are regarded as jealously by the law as are personal dealings between a director and his corporation, and where the fairness of such transactions is challenged the burden is upon those who would maintain them to show their entire fairness and where a sale is involved the full adequacy of the consideration. Especially is this true where a common director is dominating in influence or in character.

This court has been consistently emphatic in the application of this rule, which, it has declared, is founded in soundest morality, and we now add in the soundest business policy. Twin-Lick Oil Co. v. Marbury, 91 U.S. 587, 588, 23 L.Ed. 328; Thomas v. Brownville, etc., R. Co., 109 U.S. 522, 3 S.Ct. 315, 27 L.Ed. 1018; Wardell v. Railroad Co., 103 U.S. 651, 658, 26 L.Ed. 509; Corsicana National Bank v. Johnson, 251 U.S. 68, 90, 40 S.Ct. 82, 64 L.Ed. 141." Geddes v. Anaconda Copper Mining Co. et al., 254 U.S. 590, 41 S.Ct. 209, 212, 65 L.Ed. 425.

■ We admit that corporate officers and directors are presumed to know everything about the corporate affairs that they could have learned by exercising reasonable care. We do not subscribe, however, "that it was the duty of the corporate directors of the Securities Company to know all about the affairs of the Corporation, and that this duty and knowledge are also chargeable to the Receiver of the De Soto Bank." We have been cited no law which goes that far. We believe that reasonable care and diligence is all that is required of an officer and director of a corporation. Otherwise, every new director of a corporation would be forced to obtain an audit and history of the corporation, since he is charged with knowledge of any and every irregularity that might previously have existed.

■ We admit that notice of facts which ought to excite inquiry, and which, if pursued, lead to knowledge of other facts, operates as notice. National Park Bank v. Concordia Land & Timber Co., 159 La. 86, 105 So. 234. The defendant in this case sought to avoid liability for tort by a plea of prescription, and the plea was rejected because an officer of the corporation had knowledge of the alleged tort or had knowledge of the facts tending to prove the existence of the injury.

Inconsistently, it is argued that plaintiff and interveners should be relieved of their ignorance of the affairs of the Securities Company of which they are stockholders but that the receiver is chargeable with knowledge of all its affairs, even those already existing before the receivership. We find plaintiff and interveners knew that their stock was in default in payment of dividends on and continuously after July 1, 1932, and that the directors of the Company were also the directors of the two

banks and that the Bank of Commerce was closed for liquidation in January, 1933, and that the De Soto Bank was closed for liquidation in October, 1936. But they remained silent until the letter-demand of May 26, 1939.

It is argued further that it was the duty of the directors to know all about the affairs of the corporation, and that this duty and knowledge are also chargeable to the receiver of the De Soto Bank; that when the receiver of the De Soto Bank was appointed, the portfolio of the Securities Company showed that various notes had been endorsed by the Bank to the Securities Company, and that it owned $11,800 of the parent bank's stock; that these facts, as well as the history of the heavy pyramiding of assets, were sufficient to require the receiver to make a thorough examination of the relationship between the bank and the Securities Company, and put the receiver on notice as to the real facts. Granting the argument placing this strict legal obligation upon directors and upon the receiver of the De Soto Bank, it would take the trial to furnish the necessary facts to permit the legal conclusion.

The facts stated in this argument are not supported by the record. There is nothing to show that various notes "had been endorsed by the Bank to the Securities Company," and the answer to Article 30 states that the Securities Company loaned money to the borrowers which they, the borrowers, used in paying the Bank. Therefore, nothing suggests that when Federal Deposit Insurance Corporation became the receiver of the De Soto Bank the Securities Company held notes "which had been endorsed to it by either the Bank of Commerce or the De Soto Bank."

During the time that the bank of Commerce was in existence, the Securities Company acquired some of its stock. A part of the acquisition came as a recovery on one of its loans, and the other part was an outright purchase. The Securities Company and the Bank of Commerce were institutions in the same parish seat, and such a situation is so common that we can not with any degree of satisfaction assume that such stock had been unloaded on the Securities Company by the Bank of Commerce. The point that a past loan would put the receiver on notice that previous fraudulent transactions existed is futile.

As to the heavy pyramiding, if it ever existed, it is not alleged to have existed at the time the receiver of the bank caused the new board of directors to be elected by the Securities Company on December 1, 1936. See Article 40 of petition.

Logically, if the concurrent motion for summary judgment—the one filed on the behalf of the receiver of the De Soto Bank and Trust Company, based on the failure to file the claim with the receiver within the statutory period—were to be good, then the motion for a summary judgment we are now considering could not arise. For even though predicate facts had occurred, and granting its full force and effect, the other precludes it.

So, all in all, under the principle given by the cases cited above in connection with Rule 56, the motion for a summary judgment by the plaintiff must be overruled.

We shall now consider the motion for a summary judgment filed by the De Soto Bank and Trust Company in receivership, and by the De Soto Corporation. Their contention is that the action of plaintiff and of the interveners against the receiver of De Soto Bank and Trust Company (Federal Deposit Insurance Corporation is the receiver) is barred under Section 4 of Act No. 300 of 1910 of the Legislature of Louisiana.

The facts which the court hereby and herewith declares to have been proved as unquestionably true by affidavits accompanying the motion are these:

A. That Federal Deposit Insurance Corporation is the duly qualified and confirmed receiver of De Soto Bank and Trust Company, of Mansfield, Louisiana, acting under the provisions of Act No. 300 of 1910 and Act No. 180 of 1934, of the Legislature of Louisiana;

B. That a notice calling on all persons having claims against the De Soto Bank and Trust Company, in receivership, to file the same with Federal Deposit Insurance Corporation, receiver, and to make legal proof thereof not later than March 15, 1937, was published in the Mansfield Enterprise, a weekly newspaper published in the town of Mansfield, De Soto Parish, Louisiana, in each weekly issue thereof from December 3, 1936, to March 18, 1937, both inclusive;

C. That the claims asserted by the plaintiff and interveners in this cause have never been filed with Federal Deposit Insurance Corporation, receiver, or with any agent

of the receiver, and that the receiver, its agents and employees, had no knowledge of any such claims prior to receipt of the letter from Eugene A. Nabors dated May 26, 1939, described in articles 68, 69, 70, and 71 of the original petition;

D. That an indebtedness of $16,225 (described in article 53 of the original petition as being $19,045.15), was listed as an indebtedness of the Securities Company unto the De Soto Bank and Trust Company in the inventory of assets of the bank made and filed in the court and mortgage records, by the State Bank Commissioner of the State of Louisiana, in accordance with Section 3 of Act No. 300 of 1910 of the Legislature of Louisiana.

In the case, In re Interstate Trust & Banking Co., 188 La. 211, 176 So. 1, at page 4, it is said:

"Section 4 of Act No. 300 of 1910 covers all claims against a banking corporation in liquidation—not only claims for deposits, but other claims as well. The section so far as it covers claims other than deposits provides: 'That as soon as practicable after taking such possession of a corporation the State Examiner of State Banks shall cause to be published a notice to appear at least once per week for three months in such newspaper as he may select. This notice shall call upon all persons, other than depositors, who may have claims against the corporation to file the same with the State Bank Examiner of State Banks and make legal proof as to the justice thereof, at a place and within a time not earlier than the last day of publication of such notice to be specified therein. If the said Examiner shall doubt the justice or validity of any such claim so filed, he may reject the same and serve notice of such rejection upon the claimant either by mail or personally. An affidavit of such notice shall be filed in the office of the State Examiner of State Banks and shall be prima facie evidence of such service. An action upon such claim may be brought only within six months after the date of such service.' Then follows the provisions covering the claims of depositors.

"The liquidators contend that under section 4 of Act No. 300 of 1910, all claimants other than depositors were required to file and make legal proof of their claims on or before April 26, 1934, and that the claims of those opponents who failed to do so are barred by the statutory limitation. We think the contention is well founded and should prevail.

\* \* \* \* \* \*

"But what the liquidators are asking the court to do in this case is neither unusual nor unreasonable. Statutory provisions barring a claim not filed within a specified time against an estate in liquidation are numerous. The most familiar example of such a provision is the one contained in the National Bankruptcy Act, providing that claims shall not be proved against a bankrupt estate subsequent to six months after the adjudication. Section 57n, as amended by Act May 27, 1926, § 13 (11 U.S.C.A. § 93 (n). The time limit therein expressed effectively bars the subsequent filing of a proof of claim. Hutchinson v. Otis, 190 U.S. 552, 23 S.Ct. 778, 47 L.Ed. 1179; Gilbert's Collier on Bankruptcy (3d Ed.) pp. 763, 764. There are also statutes of a number of the other states, dealing with the liquidation of banking institutions, which provide for the barring of claims after a specified time or within a time to be fixed by the Bank Commissioner or Superintendent of Banks. The reason for such statutory provisions is clearly expressed by the Missouri Court of Appeals in Bowersock Mills & Power Co. v. Citizens' Trust Co. of Gorin, Mo.App., 298 S.W. 1049, 1051, in the following language, viz.:

"'It is perfectly apparent that if there were no provisions for prompt and accurate ascertainment of the liabilities of an insolvent bank, and if there were no provisions for shortening the period of limitation for the presentation of claims and the filing of suits thereon, it manifestly would be impossible for the commissioner to wind up the administration of an estate until the general statutes of limitations had run, and even then, under certain disabilities of claimants, it could not be wound up. Furthermore, if the assets could be allocated pro tanto to the claim of any particular creditor by a decree without first presenting the claim to the commissioner or considered by the court having primary jurisdiction over the estate to determine preferences and priorities, then the estate could be whittled away by successive actions to the prejudice of the rights of other creditors. The whole scheme as laid by the statutes is to compel the presentation of claims within a certain time so that all claims may be determined with reference to the rights and equities of each and every creditor. The statutes undoubtedly

are aimed at inaction and delay. The four months' period for filing claims and the six months' period for bringing suit certainly afford any claimant who desires to assert his rights in court sufficient opportunity and length of time in which to do so.' "

■ The law of the above case applies to this case, since the affidavit filed (and undisputed) fixes March 15, 1937, as the last day for persons, other than depositors, to file claims against the De Soto Bank and Trust Company, and the first evidence of any claim ever made by the plaintiff (and the interveners take the suit as they find it) was the letter addressed to the receiver of the De Soto Bank and Trust Company, dated May 26, 1939, referred to in Articles 68–71 of the plaintiff's petition. Therefore, the action of plaintiff based on this claim is precluded and barred.

There are a series of attacks (W, X, Y, Z) made by the plaintiff to our ruling:

W. In our opinion at 45 F.Supp. 871, at page 883, headnotes 14 and 15, supra, we said:

"It is clear that plaintiff has been guilty of laches in this case. Plaintiff waited for more than two years after the claim against the De Soto Bank, in receivership, had become barred under Louisiana Act 300 of 1910 before calling to the attention of the receiver and of the newly elected officers and directors of the De Soto Securities Company any possible claim the De Soto Securities Company might have. Plaintiff acquired her stock in 1935, at a time when the interest dividend thereon was more than three years in default, and held the stock for more than one year while the De Soto Bank was open and a going concern. The former officers and directors of the banks in question and of the De Soto Securities Company are now out of office and the management of these concerns is now in the hands of persons who must rely entirely upon the books, papers and records in the offices of the banks and of the De Soto Securities Company. It is fair to assume that many of the former officers and directors or employees with knowledge of the affairs have died, moved away, or for other reasons will be unavailable. Since none of them is made a party to this suit, he would have no particular interest in defending this action or in furnishing to the present defendants any assistance.

" 'One important principle involved in the term "laches" is that, after a long lapse of years, during which testimony is impaired or destroyed, witnesses remove or die, their recollection is dimmed or lost, and papers, letters, documents, books, records, etc., are lost or destroyed, or if not lost or destroyed, are in the hands of persons not familiar with their contents, liable to misinterpret them, unable to supply their defects, or correct the same, or explain them from the memory of living witnesses, the defendant is at the complete mercy of any claimants who may wish to take advantage of the situation. Time impairs and destroys evidence of the true facts, and makes it practically impossible to meet positive testimony of the complainants, whether the same be true or untrue. A court of equity, therefore, finding itself unable to render substantial justice between the parties, asserts the principle of laches on the ground of public policy and for the repose of property rights.' Dempster v. Rosehill Cemetery Co., 206 Ill. 261, 68 N.E. 1070, 1074."

The circuit court in 136 F.2d 55, at page 56, said:

"Setting out the substance of the answers to the interrogatories, it then proceeds to hold that ownership of stock by the plaintiff at the time of the transaction under attack was an essential to the maintenance of the action and that the answers to the interrogatories showed the absence of this essential. Basing his order on this ground and on a finding that there had been laches, the court sustained the motion to dismiss."

The inference drawn by the plaintiff from these two quotations is that the contention of the defendant that there is a statutory bar to the action has already been passed upon, favorably by the lower court, but overruled by the appellate court; that it is res adjudicata; that the law of the case on this phase of the suit has been established.

■ We cannot subscribe to this view. The reference to the Circuit Court is merely incidental. It is not sufficiently pointedly definite as to say that the contention received a mature and deliberate consideration. The Interstate Bank case reasoning, supra, was not presented to the Circuit Court in the opinion of the lower court. The Circuit Court in its opinion makes no reference to the case, nor to the Act.

Still more important as proof of no presentation is the material difference which will be shown later in this opinion as between peremption and prescription.

This difference has not received any appreciation as yet by either the lower court or the appellate court.

Moreover, there has never been submitted the formally-drawn, special plea. That is a necessity under the commonly-accepted practice. Further, a formal plea in bar could not formerly be effectively submitted, in the manner of getting rid of the whole case, so long as the plaintiff was claiming for excessive rents, excessive attorneys' fees, and auditing expenses, etc., all items of expense incurred and collected for from the Securities Company subsequent to the expiration time of filing claims under Section 4 of Act No. 300 of 1910 against the receiver. The record of this case at the time of the expression from the Circuit Court was entirely lacking in design to bring about the precise application of the Louisiana act. Since the items of expense above enumerated, occurring after the date of filing claims under the act, have been abandoned, and since the amended petitions and stipulations delimiting further the issues and showing that all of the claims on behalf of the Securities Company are based on transactions occurring prior to the receivership, the present motion for a summary judgment became timely and appropriate.

It is granted that the general question of laches was considered by the Circuit Court, including the bar under Section 4 of Act No. 300 of 1910, but it was mainly in connection with the alleged neglect of, and the consequent liability upon, the Federal Deposit Insurance Corporation, individually.

This former issue, now disposed of by both courts, was that the receiver was individually liable for the alleged negligence, and we, the court of original instance, answered that the plaintiff had been negligent and guilty of laches.

The brief of plaintiff and interveners explains it:

"Consideration was given to this matter by the District Court because of plaintiff's allegation in her petition that if it should be found that the claim of the Securities Company was barred under Act 300 of 1910, then the De Soto Bank and Trust Company (sic. Federal Deposit Insurance Corporation) would be liable for such negligence on the part of the Receiver."

So, it is clear to us that in justice to the defendant this contention made by the plaintiff that this point is already adjudged can not prevail.

X. The next serious contention of the plaintiff is that the statute was never intended by the Legislature to apply to a case, as allegedly in the instant one, where failure to file a claim results from a receiver's breach of fiduciary relationship and such breach enures to the benefit of the depositors of a bank in receivership. The answer to this is that the affidavit by Francis E. Powell, liquidator for the Federal Deposit Insurance Company, receiver, shows that he, the receiver, was without any information or notice of the possible or probable existence of the claims on which this suit has been filed, prior to the receipt of the letter of demand dated May 26, 1939. Mr. Powell was not originally a resident of the city of Mansfield or the parish of De Soto, and came to the locus on or about October 21, 1936, at the time he became liquidator for F.D.I.C. in its capacity of receiver for De Soto Bank and Trust Company. The court believes unreservedly this affidavit to be true; we have seen Mr. Powell during this litigation and, then, the numerous detailed and general circumstances are corroborative.

■ It is contended further that the statutory bar does not apply in the instant case because the plaintiff and interveners were not aware of the facts on which their claim is based. This objection is overcome by the contention that a plea of peremption or statutory bar is urged and not a plea of prescription or limitation.

■ The case of Guillory v. Avoyelles Ry. Co., 104 La. 11, 28 So. 899, at page 901, says:

"When a statute creates a right of action, and stipulates the delay within which that right is to be executed, the delay thus fixed is not, properly speaking, one of prescription, but it is one of peremption. Statutes of prescription simply bar the remedy. Statutes of peremption destroy the cause of action itself. That is to say, after the limit of time expires the cause of action no longer exists; it is lost. Taylor v. [Cranberry Iron &] Coal Co., 94 N.C. 525; Cooper v. Lyons, 9 Lea [Tenn.], 596."

The principle of the above case has had far-reaching and consistent application. Even as to right to workmen's compensation (usually given liberal interpretation),

the statutory bar applies. See Brister v. Wray-Dickinson Co., Inc., La.App., 159 So. 430 (fine general discussion). Also, see Hollingsworth v. Schanland, 155 La. 825, 99 So. 613, 616; Matthews v. Kansas City Southern R. Co., 10 La.App. 382, 120 So. 907, 908; Heard v. Receivers of Parker Gravel Co., La.App., 194 So. 142, 144; Brister v. Wray-Dickinson Co., Inc., 183 La. 562, 164 So. 415, 416; Smith v. Monroe Grocery Co., La.App., 171 So. 167, 170; Carpenter v. Cox, La.App., 186 So. 863, 865.

It would seem, therefore, that whether or not plaintiff and interveners knew of their claim is immaterial; it is obvious also that since Mr. Powell, who allegedly has violated his fiduciary relationship, granting there was any between him and the De Soto Securities Company, had no knowledge whatsoever of the possibility or probability of the existence of such a claim, and since nothing in the record, such as inventory of assets, etc., would disclose such to him, this point made by the plaintiff that he should have made the claim, and that if he did not he was a violator of a confidence imposed upon him towards the De Soto Securities Company, is likewise unavailing to the plaintiff. Anyway, the action is dead by the statutory bar. The policy of the Legislature is that there is more good to the general public in the expedition of liquidation of banks than there would be in preventing the occasional injury to one individual or another, as is presumed to have occurred in this case.

The Louisiana banking policy formed during the depression has been one favoring the liberal application of the laws of repose. We in Louisiana doubtless felt that the newly- and quickly-organized institutions emerging from the financial collapse should be freed of harassment from the claims of the past. Scores of suits like the instant one could be initiated all over our state. The financial stability of the future was the object; actions such as this one are retardative and tend to temporary insecurity, at least. The American public had to feel that the new financial base was not subject to attack. Capital subscriptions from the local investing public had to be sought for the freshly-established banks; possible or probable attacks such as the instant one would have at least deterred, if not prevented, these subscriptions.

The peremption against claims, other than depositors' accounts, under Section 4 of Act No. 300 of 1910 has been uniformly and generally applied in our numerous bank liquidations. No variation from the holding in the Interstate Bank case, supra, has come from the Supreme Court. See Brock, State Bank Com'r, v. Citizens' State Bank & Trust Co., La.App., 180 So. 650, 651; Brock, Bank Com'r, v. Citizens' State Bank & Trust Co., 190 La. 572, 182 So. 679, 682.

Plaintiff and interveners further argue against peremption by contending that the receiver was negligent, and breached its fiduciary obligation in failing to have the claim filed. However, it is not claimed that the receiver, or any of its agents, had any knowledge of the existence of this alleged claim (assumed as existing under this motion for summary judgment) or of the alleged facts on which this suit is based.

Therefore, in order to charge the receiver with negligence, the court must find that it was the duty of the receiver to conduct a thorough research into all of the affairs of the De Soto Securities Company for a period of eight or ten years for the purpose of discovering whether or not there existed transactions on which a claim against the receivership in favor of the securities company could be based; and that the receiver was negligent in failing to make this inquiry. There is no foundation for this conclusion. All of the acts of alleged mismanagement claimed as having caused damage to the Securities Company occurred while the Bank of Commerce was in existence. The only wrong alleged against the De Soto Bank and against the receiver is that they failed to discover, protect and prosecute the Securities Company's claim for damages caused by the mismanagement charged to the Bank of Commerce. No reason this to except the application of the Act.

Are we to discuss whether or not the officers and directors of the Securities Company prior to December 1, 1936 (date on which the receiver's agents are alleged to have been elected directors) were guilty of mismanagement or breach of fiduciary obligation? We think not. The receiver's agents were elected directors when the former directors resigned and because of the legal duty on the receiver in its capacity as holder of all the common stock of the Securities Company. The general

obligation of a receiver in such circumstances is well stated in Fletcher, Cyclopedia Corporations, Perm. Ed., Sec. 7865, as follows:

"A receiver must exercise the care, diligence and discretion of an ordinarily careful business man in business pursuits of a similar character, or the same degree of care that the corporation, if a going concern and under the control of its board of directors would be required."

The receiver here is not charged with selecting as directors of the corporation persons or agents who were unqualified or otherwise lacking in ability to discharge their duties. It is not claimed that the receiver had actual notice of any facts suggesting a history of mismanagement or breach of fiduciary obligations by prior managements.

Y. Then the plaintiffs and interveners further say that if it should be held that the claims against the De Soto Bank and Trust Company, in receivership, have become barred because of the failure to file claims by the receiver, then the F.D.I.C.'s failure to file the claim would constitute a new and independent illegal act by the receiver during the receivership, giving rise to a claim which was not subject to the filing requirement of Section 4 of Act No. 300 of 1910. And, consequently, this claim would be presently valid and binding against the receiver of the De Soto Bank and Trust Company, to be measured by the claims for damages asserted in this suit by the plaintiff and interveners, citing Cox v. Stone, 146 La. 81, 83 So. 305.

Firstly on this point, we do not think that the status in the pleadings of this case would permit of a judgment against the F.D.I.C. because of the District and Circuit Court opinions, supra, in the instant case.

Secondly, pretermitting this lastly made point, we can not see how the F.D.I.C. could be burdened with collateral inquiry into the thousands of transactions involved in banks in liquidation, which under the statute guaranteeing bank deposits, it must come to help by taking charge, etc. Plaintiffs and interveners residing in the community for years, being directly concerned, should be moved by their interest to find out their claims, if any, in time to file to prevent the statutory bar. We admit the claim—but, by the statute, it is now dead.

Lastly and finally, even if the receiver of the De Soto Bank and Trust Company had known of the possible or probable claims being now asserted in this suit, prior to the payment to it of the $16,225, and if the correctness of the amount had been established, there existed under the laws of Louisiana no right of offset and compensation which would void the right and duty of the receiver to require the payment of this indebtedness from the De Soto Securities Company, Incorporated. See People's Bank v. Mississippi & Lafourche Drainage Dist., 141 La. 1009, 76 So. 179.

The appellate courts and the Supreme Court have given regular application repeatedly to the principle of this case, though in varying factual and legal situations: Feliciana Bank & Trust Co. v. City Bank & Trust Co. of Mobile, Ala., 144 La. 389, 80 So. 600, 602; Thomas, State Bank Examiner, v. Marine Bank & Trust Co., 156 La. 941, 101 So. 315, 317; People's Bank & Trust Co. v. Louisiana State Rice M. Co., 10 La.App. 401, 119 So. 779; In re Canal Bank & Trust Co., 178 La. 961, 152 So. 578, 580; In re Tangipahoa Bank & Trust Co., La.App., 161 So. 884, 886; Watkins v. Bank of Morgan City & Trust Co., La.App., 162 So. 262, 263, 264; Hammond Box Co., Inc., v. Tangipahoa Bank & Trust Co., La.App., 169 So. 87, 88; Brock v. Pan American Petroleum Corporation, 186 La. 607, 173 So. 121, 122; In re Liquidation of Hibernia Bank & Trust Co., 189 La. 813, 180 So. 646, 647; Federal Deposit Ins. Corporation v. Lowrey, La.App., 183 So. 113, 115; Brock v. Black, Rogers & Co., 192 La. 49, 187 So. 51, 52; Federal Deposit Ins. Corporation v. Page, La.App., 195 So. 629, 632.

Again, we cannot see how these points are to prevail against the peremption.

Z. A final and additional exception is sought from the statutory bar because when the notice was run in the local paper, beginning December, 1936, inviting all parties who had claims against the bank to file them, the notice referred to claims then in existence. This statement is expanded in the brief of counsel, as follows:

"The item of $16,225.00 which was wrongfully repaid by the Receiver from the funds of the Securities Company to the De Soto Bank in violation of its fiduciary relationship was paid subsequent to December, 1936, when the notice first be-

gan to run in the newspaper. The answer to interrogatory 200 (b) shows that $3,800.00 of this amount was paid on February 10, 1937, and the remainder was paid during the year 1938, long after the period fixed for filing claims had passed. It is true that the $3,800.00 was paid on February 10, 1937, and the last date fixed for filing claims was on March 15th in the same year, still since neither the plaintiff nor interveners, as shown by their affidavits, had any knowledge of any facts indicating the existence of these claims it would be harsh and inequitable to so construe Act 300 of 1910 to make it refer to future claims rather than the claims in existence in December, 1936, when the notice started running, if it be assumed that the act applied to the filing of these claims at all, which is denied."

It is alleged by the plaintiff and interveners that the receiver wrongfully failed to prosecute the claim of the Securities Company against the De Soto Bank and Trust Company—the two companies having the same person as receiver. This particular criticism is answered by what we have just said under X. The receiver for the De Soto Securities Company knew of no possible or probable claim. What it had before it was (and this is on file by affidavit attached to the motion to dismiss) that on October 9, 1936, the state bank commissioner listed the assets of the De Soto Bank and Trust Company and filed them with the local state district court as provided by Act No. 300 of 1910. Therein was listed the notes of the De Soto Securities Company in the total amount of $16,225. This was public, a notice to the world (surely including the interested plaintiff and interveners), and it was the receiver's duty to collect it. It was never aware of any possible objection until May 26, 1939, upon the receipt of the letter of demand from the attorney for the present plaintiff.

So, frankly, we do not see that plaintiff and interveners may escape the ban of the statutory bar.

We agree that corporate directors and trustees are fiduciaries. Crichton v. Webb Press Co., 113 La. 167, 36 So. 926, 67 L.R.A. 76, 104 Am.St.Rep. 500; Dawkins v. Mitchell, 149 La. 1038, 90 So. 396; LaGrone v. Brown, 161 La. 784, 109 So. 490. However, it is not claimed in this suit that the receiver or any of its agents had any knowledge of the existence of this claim or of the alleged facts on which this suit is based.

May this court charge the receiver with imputed negligence because it failed to conduct a thorough research into all of the affairs of the De Soto Securities Company for a period of eight or ten years for the purpose of discovering whether or not transactions existed on which a claim against the receiver of the Securities Company could be based? We think not.

There is no foundation for such a conclusion. As a matter of fact, all of the acts of alleged mismanagement which it is claimed caused damage to the Securities Company occurred while the Bank of Commerce was in existence. The Bank of Commerce was absorbed by the De Soto Bank and Trust Company, and the latter then went into receivership. At this juncture the F.D.I.C., having guaranteed deposits of this latter bank, under the new national regime of depositors' full protection, of necessity took charge of the bank, and we do not think that imputed negligence is to be charged because it failed to discover and protect these supposed Securities Company's claims for damages caused by the mismanagement of the Bank of Commerce.

The argument loses none of its power and application because the De Soto Bank and Trust Company, newly-sprung from the ashes of the Bank of Commerce, with all the protection of Act No. 300 of 1910, unfortunately failed to live on as intended, and was compelled itself to go in liquidation, with its depositors guaranteed, however, by the F.D.I.C., differently from the status of the depositors of the Bank of Commerce. Its birth none the less was intended to give it long financial life, free certainly from all hindrances of the past by the beneficent guard of the peremption granted under Act No. 300 of 1910.

Judgment sustaining the motion for the summary judgment filed by the defendants will be signed upon presentation.