34 So.2d 400

**BANK OF LAFAYETTE & TRUST CO. v. COMMERCIAL BANK OF LAFAYETTE & TRUST CO. et al.**

No. 38762.

Feb. 16, 1948.

Davidson & Davidson, of Lafayette, for plaintiff-appellant.

Welton P. Mouton and Voorhies & Labbe, all of Lafayette, for defendants-appellees.

HAWTHORNE, Justice.

Plaintiff-appellant, Bank of Lafayette & Trust Company in liquidation, represented by its liquidating commissioners, instituted this suit on February 19, 1944, against the Commercial Bank of Lafayette & Trust Company, also in liquidation, and Wilfred J. Begnaud, state bank commissioner, and F. L. Gauthier, special agent in charge, for an accounting of the assets and liabilities which were acquired by the defendant bank from the plaintiff bank under and by virtue of a contract dated March 27, 1931, this account to be rendered as of February 7, 1944, and prayed that as a result of said accounting plaintiff bank be decreed to be the owner of the funds and assets which resulted from a liquidation of assets acquired from the plaintiff bank by the defendant bank, such funds and assets to be transferred to the plaintiff bank for the use and benefit of its stockholders.

To plaintiff's petition defendants filed what they styled "an exception of estoppel". This exception was submitted to the lower court on an agreed statement of

facts, and in due course the district judge rendered judgment maintaining the plea, rejecting plaintiff's demands, and dismissing its suit at its costs. From this judgment plaintiff has appealed to this court.

The Bank of Lafayette & Trust Company, by act of sale dated March 27, 1931, conveyed unto the Commercial Bank of Lafayette & Trust Company all its assets of every nature and description as they appeared on the books of the bank as of the close of business on that day. The consideration was the assumption by the Commercial Bank of Lafayette & Trust Company of all the obligations and liabilities of the seller as of that day, exclusive of the obligation of the selling bank to its own stockholders.

In connection with this sale, the parties thereto entered into the contract, likewise dated March 27, 1931, out of which this litigation arises. In this contract defendant, Commercial Bank of Lafayette & Trust Company, agreed that during a period of three years from and after the date of the sale it would proceed to collect and reduce to cash the assets acquired by it from the plaintiff bank, the method of so doing to rest in the uncontrolled discretion of the defendant bank, with full power to sell, compromise, substitute, etc.; that it would report annually in writing to the liquidating commissioners of the Bank of Lafayette & Trust Company (that bank being placed in voluntary liquidation thereafter by act of its stockholders on May 5, 1931) the results of the operations of these assets during the preceding year; that it would at the end of three years from the date of the sale render a final report to the liquidating commissioners of the result of its handling of the assets acquired by it. The defendant further agreed that at the end of the third year it would pay to the liquidating commissioners of the selling bank any sums realized by it in excess of the liabilities of the selling bank, assumed by it in the act of sale, less costs, charges, and expenses incurred in realization thereof, the purpose being to account for any residuum left in due course of administration of the assets in excess of the liabilities and expenses in handling such assets.

The selling bank guaranteed that the assets conveyed to the purchaser would on liquidation produce and realize for the purchaser, Commercial Bank of Lafayette & Trust Company, a sum equal to the debts and liabilities assumed by it in the act of sale, including depositors' accounts, by obligating itself to indemnify the purchasing bank up to the amount of $150,000 against any loss which might be incurred in the liquidation of the assets and the assumption of the liabilities. Should the assets on liquidation prove unequal or insufficient to discharge the liabilities aforesaid, the Bank of Lafayette & Trust Company under its guarantee agreed to pay to the Commercial Bank of Lafayette & Trust Company upon demand the sum of $150,000, or so much thereof as might be necessary to

make good any loss of the purchasing bank resulting from the liquidation of these assets for a sum less than the amount of the liabilities so assumed.

Eight individuals, who were actually officers and stockholders of the Bank of Lafayette & Trust Company, two of whom were named as liquidators, made themselves parties to this contract and agreement, obligating themselves individually and as sureties in various amounts up to the aggregate sum of $150,000, thus likewise guaranteeing the purchasing bank against loss as a result of its taking over the assets and liabilities of the Bank of Lafayette & Trust Company.

At the end of the three-year period the Commercial Bank of Lafayette & Trust Company rendered what it styled its final report, in compliance with the contract, showing a loss far in excess of $150,000, and demanded of the Bank of Lafayette & Trust Company and the indemnitors the full sum of $150,000 in accordance with their obligation in the contract.

The Bank of Lafayette & Trust Company denied all liability under the contract, and took the position that the Commercial Bank of Lafayette & Trust Company had breached the contract. After the Commercial Bank itself was placed in liquidation, it was compelled to institute suit on the claim. That suit was filed on June 11, 1934, for the full amount of $150,-000, predicated on the contract of March 27, 1931, against each of the guarantors and the Bank of Lafayette & Trust Company in liquidation, plaintiff in the case now under consideration.

In answer to that suit defendants therein, denying liability, took the position that the Commercial Bank of Lafayette & Trust Company had failed to carry out the obligations imposed upon it by the contract of March 27, 1931, thereby breaching the contract; that this contract expired by its terms on March 27, 1934, and that, if such liability had existed, it ceased to exist on that date because of the prior failure of the Commercial Bank of Lafayette & Trust Company to comply with the obligations which it had assumed under this contract. Moreover, in its answer the Bank of Lafayette & Trust Company, one of the defendants therein, did not advance any claim against the plaintiff therein or ask for an accounting predicated on the contract.

Although many pleas and exceptions were filed and disposed of therein over a period of years, that suit was never tried on the merits, but was compromised on May 22, 1941, approximately seven years after it had been filed, and was dismissed as to all parties. In this compromise certain of the guarantors who had been named defendants paid to the Commercial Bank of Lafayette & Trust Company, in full satisfaction of the indemnity agreement, $15,000 in cash and transferred to the bank certain oil royalties and bank stock.

According to the stipulation of facts in the record, the liquidation of the assets of the Commercial Bank of Lafayette and Trust Company, as well as those acquired from the Bank of Lafayette & Trust Company pursuant to the contract dated March 27, 1931, continued up to February 9, 1944. On January 3, 1944, the state bank commissioner and the special agent caused to be inserted in a newspaper published in the Town of Lafayette a notice of a meeting of the stockholders of the Commercial Bank of Lafayette & Trust Company to be held on February 9, 1944, which notice stated that the Commercial Bank of Lafayette & Trust Company had paid all debts and charges, and that the state bank commissioner proposed to deliver to the stockholders all the assets remaining on hand after the payment of all debts and charges due by the bank. This was plaintiff's first knowledge that the liquidation of assets was sufficient to pay all debts and charges and leave a residue thereafter. The plaintiff instituted the present suit on February 19, 1944, praying for an accounting of the assets acquired from it by the defendant bank, and for any residue resulting from the liquidation of those assets.

The exception which the trial judge sustained in dismissing plaintiff's suit, among other things, sets forth "That plaintiff herein is barred by laches from bringing these proceedings against exceptors herein, in failing to file its alleged claim under Section 4, Act 300 of 1910". Exceptors simply mean by this language that plaintiff's suit *is barred* by its failure to file its claim with the commissioner of the defendant bank in liquidation on or before August 15, 1934, in accordance with the published notice of the commissioner to all claimants, except depositors, to file their respective claims (the first publication being on May 5, 1934, and the last on August 10, 1934).

That the trial judge so considered the plea is clearly shown in his reasons for judgment, in which, after discussing several other reasons for sustaining the plea, he stated that there was the additional reason that the claim was not filed within the period referred to in the bank liquidation act. Act No. 300 of 1910.

The pertinent part of Section 4 of Act No. 300 of 1910 reads as follows: "As soon as practicable after taking such possession of a corporation the State Examiner of State Banks now state bank commissioner shall cause to be published a notice to appear at least once per week for three months in such newspaper as he may select. This notice shall call upon all persons, other than depositors, *who may have claims against the corporation to file the same with the State Examiner of State Banks and make legal proof as to the justice thereof, at a place and within a time not earlier than the last day of publication of such notice to be specified therein.* If the said Examiner shall doubt the justice or validity of any such claim so filed, he may reject the same and serve notice of such rejection

upon the claimant either by mail or personally. * * *" (All italics ours.)

The same section of the act further provides that an action on any claim so filed which has been rejected may be brought only within six months after the date of the service of notice of rejection.

The stipulation filed herein shows that on April 20, 1934, the Commercial Bank of Lafayette & Trust Company was placed in liquidation, and, pursuant to the provisions of Section 4 of Act No. 300 of 1910, a notice was published in a newspaper of Lafayette Louisiana, in the manner and during the time provided by the statute, to the creditors, other than depositors, who might have claims against the bank to file them on or before August 15, 1934.

Plaintiff-appellant, the Bank of Lafayette & Trust Company, did not file any claim, and the first notice to the Commercial Bank of Lafayette & Trust Company of the claim of the plaintiff bank, now urged in the present suit, was given when the Bank of Lafayette & Trust Company asserted this claim on January 29, 1944, by a rule filed in the liquidation proceedings of the Commercial Bank of Lafayette & Trust Company, which was subsequently dismissed as of nonsuit.

Section 4 of Act No. 300 of 1910 has been interpreted in the case of In re Interstate Trust and Banking Co., 188 La. 211, 176 So. 1, 6, wherein numerous claimants filed oppositions to a provisional account filed by the liquidators, opposing the distribution to each depositor of 10 per cent of his deposit, and demanded to be paid by preference, either because of alleged rank of their respective claims or because of alleged privileges upon the assets of the defunct bank. The liquidators filed a plea in bar, founded on the proposition that the opponents to the account had failed to comply with the provisions of Section 4 of Act No. 300 of 1910, in that they had failed to file their claims within the prescribed limit of time after the publication of notice for the filing of such claims by creditors other than depositors.

On appeal this court concluded that the plea filed by the liquidators was well founded and should prevail, and accordingly dismissed the claim of the opponents who had failed to file and make legal proof of their claims pursuant to Section 4 of Act No. 300 of 1910, these claims being barred by statutory limitation.

In the cited case this court analyzed and discussed Act No. 300 of 1910 and pointed out that *the act covers all claims against a banking corporation in liquidation,* not only claims for depositors but other claims as well. In the course of our opinion we said: "It is clear that the general purpose of Act No. 300 of 1910 is to provide a method for the prompt, economical, and equitable liquidation of banks and banking institutions. It is also clear that the provisions of section 4 of the statute constitute an important part of the comprehensive plan provided for such liquidation. And it is not difficult

to conceive that the entire plan would be seriously impaired, if not destroyed, if persons other than depositors should be permitted to file their claims at any time their convenience or caprice might dictate."

In our further discussion of the act in that case we said: *"If it was the intention of the Legislature, and we think it was, that all claimants other than depositors should be required to file and prove their claims within a fixed period of time, then it inevitably follows that failure to comply with the requirement bars such claimants from subsequently asserting their claims. If this were not so, the publishing of the notice and the calling upon claimants for the presentation and proof of their claims are but idle ceremonies and are of no legal or practical effect whatever."*

In sustaining the plea in bar in the cited case, we pointed out that no unfairness would result to the opponents for the reason that they all received notice by publication to file their claims, and the three months' period allowed by the act for filing claims and the six months' period allowed for instituting suit afforded them ample time and opportunity to assert judicially their rights if they so desired.

In Mullins et al. v. De Soto Bank & Trust Co. et al., 149 F.2d 864, 866, the United States Circuit Court of Appeals for the Fifth Circuit, in affirming a judgment of the District Court, 56 F.Supp. 907, dismissing certain claims filed against the bank in liquidation on the express ground that the claims were barred on account of the failure of the claimants to file them with the bank liquidators within the statutory period as prescribed by Section 4 of Act No. 300 of 1910, said: "* * * the invoked act contains no exception of, no qualifications as to, kinds of claims, or by whom pressed or presented. * * *"

The claimants in that case contended that the statutory bar was not applicable for the reason that, under the facts stated therein, they did not and could not know of the existence of their claims until long after the time fixed by the notice, published by the liquidators, for filing of claims, but the court, after reviewing the act and holding that it was applicable, stated that it was immaterial whether the claimants knew of their claims.

This brings us to the question of whether, in the instant case, the claim of the plaintiff bank is such a claim as must be filed pursuant to Section 4 of Act No. 300 of 1910. We think that it is, and that the judgment of the district court dismissing plaintiff's suit is correct; for, notwithstanding the fact that the plaintiff bank had previously taken the position that the contract of March 27, 1931, had been breached, and that there was no liability thereunder on its guaranty, it did not file any claim within the time fixed by the notice to all creditors to do so, nor, so far as the record discloses, did the defendant bank have any knowledge of any claim against it by plaintiff until January 29, 1944, ap-

proximately 10 years after the defendant bank had been placed in liquidation.

In the case here under consideration, the first and primary object of plaintiff is to obtain an accounting, and, if it is entitled to such an accounting, it was entitled to the accounting when it took the position that the defendant had breached the contract, and could have made such a claim to the bank commissioner when the defendant bank was placed in liquidation. Section 4 of the act here under consideration makes no exception as to the nature or kind of claims, covering and including all persons who may have claims. It makes no exceptions with reference to matured or unmatured, secured or unsecured, liquidated or unliquidated, conditional and privileged claims, or claims for an accounting.

In 1934, if plaintiff had filed its claim for an accounting with the liquidators of the defendant bank, and if it had been successful in its contention that the contract had been breached by the failure of defendant to liquidate the assets so acquired, we know of no reason why it could not have obtained an accounting and a judgment against the defendant for such breach.

Plaintiff contends that Act No. 300 of 1910 has no application to the instant case for the reason that the plaintiff bank had no claim against the defendant bank until the assets which had been taken over by virtue of the contract of March 27, 1931, were liquidated and reduced to cash, and

the result disclosed whether there would be a sufficient amount to pay the debts of the Bank of Lafayette & Trust Company.

In this contention the plaintiff overlooks the fact that its first and primary object in the present suit is to obtain an accounting, and it is perfectly logical that, if the Bank of Lafayette & Trust Company has the right to demand at this late date by virtue of said contract an accounting and any residuum remaining after the liquidation of the assets and payment of the liabilities, it also had the right under the contract to demand an accounting of the disposition and conditions of the assets acquired by the Commercial Bank & Trust Company from the time plaintiff first took the position that the contract had been breached, which was shown to be April 4, 1934, and prior to the time defendant bank was placed in liquidation. It appears to us that what plaintiff really complains of is the result of such an accounting if one had been made in 1934.

Plaintiff further contends that it was only after the debts were fully paid and a residue left, within the meaning of the contract, that a cause of action could be asserted by the plaintiff bank; or, stated somewhat differently, that under the very terms of the contract there was no responsibility or liability by the defendant bank to plaintiff until a residuum was left after the payment of all debts, and that the first knowledge it had of any such residuum came to it on January 3, 1944, when the

commissioner's published notice of a stockholders' meeting to be held revealed that there was a residue remaining on hand. It contends that for these reasons any suit which may have been instituted prior to the time the assets were liquidated would have been met with a plea of prematurity under the terms of the contract.

We do not think there is any merit in this contention, for it in no way excuses plaintiff's failure to file its claim pursuant to the statute with the defendant bank in liquidation, as plaintiff in making this contention clearly overlooks the fact that in 1934 it contended, as it does now, that the contract had been breached. If this were so, plaintiff had at that time a cause of action for such breach.

For the reasons assigned, the judgment is affirmed at plaintiff-appellant's costs.

O'NIELL, C. J., absent.